**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **JAYKUMAR PATEL,** | ) |
| | ) |
| **Petitioner,** | ) |
| | ) |
| **vs.** | )   **Case No. 3:24-cv-2221-DWD** |
| | ) |
| **UNITED STATES OF AMERICA,** | ) |
| | ) |
| **Respondent.** | ) |

**MEMORANDUM & ORDER**

**DUGAN, District Judge:**

Before the Court is Petitioner's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255. (Doc. 1). The Government filed a Response in Opposition to that Motion. (Doc. 3). For the reasons explained below, Petitioner's Motion is **DENIED**.

**I. BACKGROUND**

On August 3, 2021, Petitioner was indicted by a grand jury of conspiracy to commit mail fraud under 18 U.S.C. § 1349. *See USA v. Patel*, No. 21-cr-30118-DWD, Doc. 1 (S.D. Ill. Aug. 3, 2021). Petitioner initially pled not guilty to the Indictment; however, on June 28, 2022, he changed his plea to guilty. *Id*. at Docs. 21 & 37. At the Change of Plea Hearing, the Court conducted a colloquy with Petitioner to ensure the guilty plea was knowing and voluntary. Petitioner assured the Court, while under oath, that he reviewed the Indictment, was aware of the charge, understood the elements of the charge that would have to be proven by the Government, was aware of the possible penalties in the case, signed and was familiar with the contents of the Stipulation of Facts, and understood the Stipulation of Facts to be substantially true. *Id*. at Doc. 72, pgs. 2, 4, 7-10. While relying on

1

the Stipulation of Facts, the Government also provided an independent factual basis for

the Court. *Id.* at 10-12. The Government stated as follows:

> From at least June 21st through June 29th of 2021, in Madison County and elsewhere, Mr. Patel knowingly conspired and agreed with others to commit an offense against the United States in violation of 1341. During this time, the FedEx Corporation and UPS were commercial interstate carriers and E.R. was a resident of Alton, Illinois. The conspirators devised a scheme to obtain money and other assets belonging to E.R. and to other victims, assets that Mr. Patel and his co-conspirators were not entitled to receive.

> The conspirators contacted elderly victims by phone and told them a fraudulent story about why they needed to send cash and other assets to the conspirators. The caller usually identified himself as a law enforcement officer, told the victim their identity or other personal information had been stolen and then told the victim he or she needed to send cash or provide gift cards to protect his or her identity. This was all false. In reality, the caller was not a law enforcement officer, the victim's identity had not been stolen and the victim did not need to send cash or gift cards to protect his or her identity. The caller instructed victims to send the cash or gift cards by FedEx or UPS. The victims often did this more than once.

> At the instruction of two co-conspirators located in India, Mr. Patel went to various locations across Florida to pick up the packages containing cash sent by the victims. After collecting the money from packages sent by the victims, Mr. Patel followed the instructions of his co-conspirators in India, who instructed him to drop the money off with other individuals. Mr. Patel joined the conspiracy knowing his co-conspirators were committing a crime and with the intent to advance the conspiracy.

> This conspiracy and scheme defrauded E.R. On June 21 of 2021 E.R. was contacted by phone by a male subject who identified himself as Weston and claiming to work for law enforcement. Weston told E.R. that E.R.'s identity had been stolen. This was not true. Weston also instructed E.R. to send $30,000 cash by FedEx to an address in St. Petersburg, Florida, to fix it. E.R. placed $29,000 cash in a FedEx envelope and sent it by FedEx from Alton, Illinois, to an address in St. Petersburg, Florida, at the instruction of the individual who identified himself as Weston. A Walgreens store was located at the address the package was sent.
> On June 29 of 2021, Mr. Patel entered that Walgreens store, St. Petersburg, Florida, and asked for a FedEx package addressed to Chris White, the name E.R. was told to put on the package. Defendant presented

> a counterfeit Florida driver's license bearing the name James Anderson to a store employee. Mr. Patel was apprehended by law enforcement officers while collecting the package sent by E.R.

*Id.*

When asked by the Court whether the above-recited facts were true and correct, Petitioner answered: "Yes, Your Honor." *Id.* at 13. Petitioner indicated he understood the rights he was giving up by pleading guilty. *Id.* at 13-15. The Court reviewed the process for assessing an appropriate sentence, and Petitioner indicated that he understood the Court "ha[s] the ability in [its] discretion to a large degree to depart or vary upward or downward from" the U.S. Sentencing Guidelines. *Id.* at 15-17. Petitioner stated he did not have any questions for his attorney, and he was satisfied with his attorney's performance in the case. *Id.* at 17. The Court subsequently accepted Petitioner's open guilty plea before allowing him to remain on bond until the Sentencing Hearing. *Id.* at 18-21.

Petitioner's Presentence Investigation Report ("PSR") was prepared and filed in advance of the Sentencing Hearing. *Id.* at Sealed Doc. 52. The PSR revealed an adjusted total offense level of 22 (*i.e.*, a base offense level of 7, +12 for a loss more than $250,000 but less than $550,000, +2 for 10 or more victims, +2 for a substantial part of the fraudulent scheme being committed outside the United States, +2 because Petitioner knew or should have known a victim of the offense was a vulnerable victim, and -3 for acceptance of responsibility), a criminal history score of 0, a criminal history category of I, and a guideline sentencing range of 41 to 51 months of imprisonment. *Id.* at 8-9, 14.

The Court held Petitioner's Sentencing Hearing on January 5, 2023. *Id.* at Docs. 53 & 71. At that hearing, the Court confirmed Petitioner was presented with, and had a

3

chance to review, the PSR. *Id.* at Doc. 71, pg. 4. The Court also confirmed that he discussed the PSR with his attorney. *Id.* at 4-5. Petitioner believed the information contained in the PSR was true and accurate. *Id.* at 6. Further, although Petitioner's attorney presented argument for a downward variance based on the application of certain adjustments, as discussed below, he did not formally object to the actual calculation of Petitioner's adjusted total offense level or to Petitioner's other guideline calculations. *Id.* at 5-6, 10-11.

The Court proceeded to discuss the factors, contained in 18 U.S.C. § 3553(a), that guided the imposition of Petitioner's sentence. *Id.* at 11-12. On the one hand, the Government sought a guideline sentence of 44 months of imprisonment, highlighting the following as to the "substantial nature" of Petitioner's crime: "[D]efendant was part of an India based conspiracy to fraud elderly victims in the United States, calling them with a frightening story and demanding money to fix it. The dollar amount here is very high, within that 250 to 550,000 range. Its near the top end of it at 483,000." *Id.* at 12-13. The Government also highlighted the 18 total victims, Petitioner's character, and the significant harm and substantial impact to the particular victims of the crime. *Id.* at 13-14.

On the other hand, Petitioner's attorney argued as follows:

> [A]s it relates to paragraph 35[, victim related adjustment,] and in regards to pleading guilty to the criminal conduct in this event, Mr. Patel has maintained that he was always under the belief that this was a billionaire that was funneling money…[and] that he did not know that these were elderly people that were actually being scammed, that he was a mule and he was told you get one percent and there are people involved that he just wasn't aware of. For the should of have [known], he did want to express to the Court the two level guideline is applicable for arguments so we understand that and the calculations are correct as calculated, but really emphasizes the should have known.

4

* * *

I do want to highlight some points that I want to make sure are not lost in the translation of this criminal episode because this is a classic case of mule v. mastermind. This is also like the Court sees in cases where you have a drug dealer that pays someone $50 to go deliver the drugs and that person gets pulled over for speeding and is found in possession of all these large amount[s] of drugs and facing this massive minimum mandatory when he was a $50 mule. Mr. Patel was a mule. He was naive. He was stupid, and he wasn't paid a lot of money for being a mule, about 6,000 or so in the nine days of indictment that the Government alleged this happened[,] I think June 21 to June 29. So it was a very short period. He made a short amount of money in that time frame. He's pleading guilty because he was told that this was a billionaire that was funneling money and this was a way to hide the money, which is illegal.

Irrespective of what it was, he knew there was something going on that was wrong. When he was arrested by the local police, he fully admitted everything. He spoke to the local police. He fully cooperated with them. He was very polite with them. The federal authorities decided to make this a federal case, which we understand because if it would have stayed a state case he would have been looking for probation for sure under the guidelines. The federal guidelines are much more severe because of all these enhancements. Even if they are known to him, even if he is thinking he's doing A and ends ups B, he is charged with or the guidelines punish what he should have known.

You also have his total restitution, he's taking account for the masterminds, the other mules' activities and that's 132,000 while he made about 6,000 or so. He's now saddled with this entire amount of money in federal court. I've explained that to him. There's a huge component for punishment for others, what did he know compared to what he gets charged with.

When you look at the characteristics of the defendant, it is very consistent with being a mule. No prior criminal history. He is now married. He has a eight month year old that his wife is now looking after. He's been pretrial release for 17 months on curfew and GPS without any violation whatsoever, abided by every condition that pretrial services had requested and the court has ordered, which is very consistent with his characteristics.

He deeply regrets his involvement with these people. At his two proffers, his information wasn't sufficient to get a 5K1 for a variety of

5

reasons. It didn't rise to that. The people over in India were unable to get the people behind it. And unfortunately, again, as you see all the time, your Honor, the masterminds get the benefit of the mule. And I think because the enhancements are quite punitive despite what he really knew and what he really did compared to others' involvement, that is why rather than having a hearing on the 12 level bump or the two level bump or the two level bump for paragraphs 32, 33, 34, 35, knew or should have known, I'm arguing it under the 3553(a) factors that the Court is allowed to go down from the 44 months the Government is seeking or the bottom of the guidelines, which is 41 months by means of a variance.

And it does seem appropriate. It seems appropriate given his lack of history, given his model appearance before this Court for 17 months, given how much he truly made and there was a dispute about there was some outline by the Government that there was 29,000 found on him on hand. They agreed that that characterization is not physically on hand. He had picked that money up and as he argued actually dropped that off at somebody else. He didn't have 29,000 on hand.

The small amount of money that he made and the small amount of time that this happened, and I don't think you're going to see Mr. Patel ever commit any crime again that is consistent with what has happened before and again.

And then finally because of this case he's got the additional punishment of probably being deported from this country. I can't make that representation. I never know what is going to happen, but I think there's a strong likelihood that once there is a conviction that at some point he also is going to be deported.

So I'm going to ask the Court to vary down to what the Court feels is appropriate, taking all the 3553(a) considerations out, what we've put in our memorandum and also what I've pointed out to the Court that is highlighted here, your Honor.

*Id*. at 10, 15-19; *see also* (Doc. 49) (Petitioner's Sentencing Memorandum and Request for

Downward Variance from the Guideline Calculation, containing these same arguments).[1]

---

[1]Petitioner's attorney agreed the Court "address[ed] everything…raised in mitigation to [his] satisfaction, even though [the Court] might disagree." *Patel*, No. 21-cr-30118-DWD, Doc. 71, pgs. 35-36.

6

After receiving these arguments from the parties, the Court reasoned:

As I indicated to you earlier, I go through the factors. I may not mention them all, but I've considered them all. I'll mention most of them but I spent quite a bit of time last night and again this morning rereading, not just what counsel provided but also victim statements and the PSR in particular, that seems to be beyond any sort of dispute, and I think everyone would agree, and I would hope everyone would agree, this is a very serious offense. The nature of the offense is very, very serious. There is obviously no dispute. I see this as a crime of exploitation. In my day, what we'd call bunco, something that is very underhanded, and I want to touch on that a little bit, but I want to go through these factors. I'm required to do it, but I think they're very poignant to illustrate what I think about the case and the particular behavior.

Prior to this offense, it appears that there's no evidence that there's a lack of respect for the law. Criminal history suggests that you, at least the information that we have, suggests that there was maybe a respect for the law evidenced by the lack of any prior crimes. However, apparently in starting, according to the PSR, in April of 2021 that all changes. That conduct escalates and continues even post arrest and this is something that causes me some concern about what you've indicated and what your attorney has indicated is because when conduct continues post arrest, even after your wife has told you not to do this anymore — which I think carries a lot of weight. It does for me. The role of the wife in helping, frankly, manage men I think is very important and you overlooked that and I'm not sure why.

But there's indication that you received a package containing $9,999 and I know there's a dispute to this, but the PSR is pointing out that this package arrived or indicated it was going to arrive. You indicated to someone in the apartment complex it was going to arrive and then misrepresented that fact to law enforcement. So this sort of thing concerns me.

Another thing that concerns me that I found in the PSR was this phone. There's this — you had a phone up to the time of arrest and then there's a new phone and we never hear anything about the old phone. And today communication is everything and if you're communicating to people from India, that old phone that has never been produced suggests to me that this conspiracy most likely extended beyond that eight days that is set forth in the indictment. So I look to that as well, as to whether you are respecting the law even after you were arrested and not ponying up the

phone that might have this information that they could maybe track down these individuals in India that your lawyer indicated you wanted to do.

You mentioned your wife telling you to stop and you continued as well. So there's—you're aware that there's something wrong. There's something in violation of the law. There's something morally wrong that you're doing, and these things call for at least in my view a high end of the guidelines and suggest a variance upward. It would not be unreasonable in those set of circumstances.

And then I look at the need to protect the public from you and your conduct here, the circumstances suggest[] a real propensity for greed. That is a concern of mine. Greed is not good, notwithstanding the movie excerpt. Greed is not good when you're willing to exploit people who don't know better, frankly. And you did it to the point of swindling elderly people. That is taken into account, I understand, in the guidelines, but the willingness to target elderly is really a concern for me at this stage. In addition to the—not just the fact that these people are vulnerable and they're elderly and that this money they have may be their life savings. You have—and I cannot disagree with the Government—committed a certain level of violence on these people.

Looking at the impact statements, they're hard to read. These poor individuals have given up in some instances all of the money they had, all they will ever have most likely. That is a level of greed that I just don't see very often. Even from drug dealers, even from mules, I don't see that level of greed and this is a very real concern for me. And I think that someone who has that level of willingness [to] commit that level of crime against the innocent is such a concern that I think that there is a need to protect the public from you. That willingness in that sort of behavior, I think heartless behavior, brazen activity, suggests that an upward variance is not unreasonable by any stretch. I've got lots more.

You are obviously a smart man. People don't go around getting MBA or pursuits of PHDs that are not very smart, and the Government brings up a good point. People that have that sort of education in this world often do very well with time, hard work and patience. Short circuiting with shortcuts to help billionaires as you argued—I'll get to that in a moment— to avoid taxes, that's a crime too. And I don't buy it. I'm sorry. I don't buy that argument. You stood before me remotely and indicated you were involved in this conspiracy and then telling me through your lawyer today and in the paperwork that, well, I didn't really know it was elderly people and I didn't really know the thing and I'm just a mule, that concerns me as

8

well is at one point you accept responsibility. I've given you points for this. And now you're backing off a little bit and saying, well, it is not really what I was involved [in]. I was just a mule.

I see that argument regularly about people being mules but you pled to the conspiracy. You were told you were helping a billionaire. It's just not plausible to me. I just don't buy that at all.

You had a good family growing up. You have a wife who is here with you today. You have a baby child. And these are the things that people seek in this country and all over the world. You had it all, education, and you are seeking out, according to you, a few thousand dollars by bilking people that can't help themselves. Again, that goes back to motivation or your greed is so strong that you're willing to place your family at risk, your education at risk, your future at risk.

I also have to look at deterrence of criminal conduct. There is basically two levels of this. One is to deter you in the future and that's the hardest or most difficult for any Judge and your lawyer says he doesn't think I will see you again and that's probably true. But there's another kind of deterrence that I want to discuss with you. Another type of deterrence is what they call general deterrence. That is my sentence needs to take into account and reflect this need to deter members of the general public from committing certain crimes like this. You can pick up the newspaper any day of the week and you can read about this sort of activity. So proper consideration for the Court is general deterrence and I think it's very significant here.

I note we have a problem with victimization of the elderly and vulnerable. Easy targets. This was not succeed—your scam—your buddies' scams from India would not succeed, but for the fact that these people are old and vulnerable and probably unsophisticated in the ways of the world and particularly since I'm not that far from that group of people—10 years or 15 years from the group of people you were bilking—I can tell you they're very trusting people. That's the way they live and you—my goodness. The things you engaged in would not have worked on probably everyone else in this room, and that is with knowledge that these things are done.

I've also read, and I believe this is true as well, that in these sorts of crimes and fraud crimes and even white collar crimes the real deterrent is prison time. I am not so sure always in drug cases with mules that prison time is a deterrent, but it really is when it comes to fraud cases, because

people who are white collar who have education, they have something to lose by being placed in prison.

So the sentence here I have to ensure the best I can serves the purpose of general deterrence and I think the general deterrence is particularly important in this individual case, and I don't believe that the guidelines serve the purposes of sentencing well in this individual case. More than vulnerability, as I mentioned, more than the number of victims is the susceptibility of these individuals of not just being defrauded but injured psychologically, and I originally thought about reading through the victims' letters on the records, but they're already part of the record and I'll save time in that regard.

Restitution, if it's paid, and I have my doubts about that any time soon, but it's not going to fix that. You psychologically injured some elderly people and reading through the letters tells me that these people, as Mr. Reed pointed out, the ones that caught my eye too are the ones who are not going to recover from this.

The timing is significant to me as well. You arrived with your feet dry in the United States, that means you arrived in the United States, in April. The first money is exchanged in May, continues into August. This suggests to me—and of course you met the individuals in India at some undisclosed time. That suggests to me that the purpose of coming here, at least in part, is to facilitate this particular offense. And then $483,947 later, the total loss in just two months, that is huge. And of course, as I mentioned the missing phone that is reflected in paragraph 18 suggests to me that there is much more swindling that we probably don't know about.

I want to mention as well some inconsistencies. Your plea tells me that you are guilty of conspiracy but your memo suggests that maybe you weren't, that you were not aware and actually thought you were helping elderly people or a rich billionaire to launder money. That suggests to me that maybe you're not as contrite as you'd have me believe.

I know as well that you're pushing the upper levels of the range for the enhancement of $250,000 to $550,000 reflected on page 32. You're at 483. It looks like you're closer to the upper end as you are the lower end as well.

The Court has considered the information in the presentence investigation report and available factors set forth in 18 USC 3553(a) as well as arguments of counsel set forth in their sentencing memoranda as argued today. I will now review the relevant factors. If either side wants me to

explain more, please let me know before the hearing ends; otherwise, I will consider my statements legally sufficient for any appellate review.

*Patel*, No. 21-cr-30118-DWD, Doc. 71, pgs. 20-28.

The Court sentenced Petitioner to 72 months of imprisonment, which represented an upward variance from the guideline range. *Id*. at Docs. 56, pg. 2; 71, pg. 28. Petitioner was also sentenced to 36 months of supervised release, a $100 assessment, $206,300 in restitution to 13 payees, and a $25,000 fine. *Id*. at Docs. 56, pgs. 3, 6; 71, pgs. 28-32.

Petitioner appealed to the Seventh Circuit. *Id*. at Doc. 59. In that appeal, Petitioner's appellate counsel filed a Motion to Withdraw and Supporting Brief, taking the following position under *Anders v. California*, 386 U.S. 738 (1967), and *U.S. v. Edwards*, 777 F.2d 364 (7th Cir. 1985): "Based upon her thorough and conscientious review of the record of the proceedings in the district court below, and from communications with the Defendant-Appellant…there exists no nonfrivolous issue that can be raised in this appeal on behalf of the Defendant-Appellant." *U.S. v. Patel*, No. 23-1080, Doc. 18 (7th Cir. Aug. 1, 2023).

In response to the Motion to Withdraw and Supporting Brief, Petitioner "concede[d] that no non-frivolous grounds for appeal exist[ed] concerning his guilty plea or conviction." *Id*. at Doc. 23, pg. 1. However, as in this case, Petitioner argued his sentence was "substantively unreasonable" due to "over reliance on factors inherent to the offense and already reflected in the calculated Guideline range." *Id*. at 1-2.

The Seventh Circuit disagreed with Petitioner. *See id*. at Doc. 24. Initially, the Seventh Circuit observed the "host of possible challenges to the district court's calculation of his guidelines range" that were considered by appellate counsel. *Id*. at 2. It noted:

11

First, she asks whether Patel could raise a nonfrivolous challenge to the application of a specific-offense characteristic enhancement because the offense involved at least ten victims. U.S.S.G. § 2B1.1(b)(2)(A). Patel did not object to this enhancement, so our review would be for plain error. *United States v. Mikulski*, 35 F.4th 1074, 1077 (7th Cir. 2022). Because Patel admitted in his plea declaration that he picked up or intended to pick up packages from at least fifteen victims, we agree with counsel that this challenge would be frivolous.

Counsel also considers whether Patel could plausibly argue that he should not have received an enhancement based on the vulnerability of his victims, *see* U.S.S.G. § 3A1.1(b)(1), given that he never spoke to a victim and did not know that any were vulnerable. But counsel rightly explains that such a challenge would be frivolous. The enhancement requires only that the defendant "should have known" that the victims were vulnerable. U.S.S.G. § 3A1.1(b)(1). Here, not only did Patel's counsel at sentencing concede that the provision applied, but Patel also admitted (in his plea declaration) that the scam targeted the elderly, who readily qualify as vulnerable, particularly when their financial investments and security are at risk. *United States v. Iriri*, 825 F.3d 351, 352 (7th Cir. 2016) (applying U.S.S.G. § 3A1.1(b)(1)). The district court noted that Patel should have known his victims were vulnerable because the packages he received (including one in which thousands of dollar bills were stuffed between the pages of a magazine wrapped in tinfoil) reflected he was not dealing with sophisticated parties.

Counsel next considers, but appropriately rejects, arguing that Patel should have received a downward adjustment for being a minor participant in the conspiracy, given that he performed a role like a drug mule, merely picking up packages and earning only a small commission. *See* U.S.S.G. § 3B1.2. As counsel points out, Patel did not invoke this provision at sentencing and, regardless, the court implicitly rejected this argument when—as part of its assessment of the factors set forth under 18 U.S.C. § 3553(a)—it disbelieved Patel's suggestion that he was unaware of the nature and extent of the scheme, given the number of packages he received and their suspicious appearance, as well as his post-arrest conduct in allowing a victim to send a package containing $10,000 in cash to his home address.

Counsel also considers whether Patel could challenge the substantive reasonableness of his above-guidelines sentence. But we would uphold as reasonable a sentence that exceeds the recommended guidelines range as long as the district court sufficiently justifies its reasons consistent

12

with the sentencing factors set forth in 18 U.S.C. § 3553(a). *See United States v. Molton*, 743 F.3d 479, 484 (7th Cir. 2014); *United States v. Faulkner*, 885 F.3d 488, 498 (7th Cir. 2018) ("The appellate court must determine whether the justification offered comports with the degree of variance from the Guidelines."). And the court here appropriately emphasized the nature and circumstances of the offense (swindling the elderly out of their life savings and conduct continuing post-arrest), Patel's personal history (betraying his supportive family and good education for easy money), and the need for deterrence (deterring fraudulent schemes against the elderly).

*Id.* at 2-3.

Although the Seventh Circuit acknowledged Petitioner's argument that this Court should not have sentenced him above the guideline range based on factors already accounted for in the sentencing guidelines, including as to the vulnerable victims and high loss amount, it held "a sentencing court need explain only why the sentence is appropriate under the relevant statutory criteria—here § 3553(a)—and the court did exactly that." *Id.* at 3. Accordingly, the Seventh Circuit granted appellate counsel's Motion to Withdraw and dismissed Petitioner's appeal. *Id.*

Thereafter, Petitioner filed the instant Motion to Vacate, Set Aside, or Correct Sentence under § 2255. (Doc. 1). Under *Strickland v. Washington*, 466 U.S. 668 (1984), he claims ineffective assistance of counsel related to the "fail[ure] to object to the courts [*sic*] procedural error in imposing sentence above guidelines, it's calculation of the guidelines, it's reasons for imposing a variance, and finding factual arguments the United States did not meet…[by a] preponderance of the evidence." (Doc. 1, pgs. 4-5). More specifically, Petitioner argues trial counsel was ineffective for failing to object to the Court's upward variance, and appellate counsel was ineffective for failing to raise a non-frivolous argument related to the upward variance, based on the fact that Petitioner's propensity

13

for greed, willingness to target the elderly, post-arrest and unindicted conduct, and use of an older phone that was not turned over to law enforcement were already contemplated by the guidelines or were otherwise inappropriate considerations in light of the evidence. (Doc. 1, pgs. 6-13). Petitioner also takes issue with trial and appellate counsels' alleged failure to challenge the actual loss and restitution calculations, invoke his minor role as a "mule" in the conspiracy, challenge whether he "actually knew who any of the victims were" for purposes of the vulnerable victim enhancement, and otherwise object to the sentence as substantively unreasonable. (Doc. 1, pgs. 13-23).

The Government filed a Response in Opposition to the Motion. (Doc. 3). In sum, it argues the Motion "lack[s] merit," as "[s]ome of these arguments *were* in fact raised by counsel at sentencing, and most were raised and rejected in the *Anders* briefing on direct appeal under a comparable standard of review." (Doc. 3, pg. 1) (Emphasis in original).

Having outlined the background of the case and the parties' arguments on Petitioner's alleged grounds for relief, the Court resolves the Motion under § 2255.

## II. ANALYSIS

Under § 2255(a), the Court will grant the "extraordinary remedy" of vacating, setting aside, or correcting Petitioner's sentence only if he demonstrates "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a); *Almonacid v. U.S.*, 476 F.3d 518, 521 (7th Cir. 2007). While § 2255(b) contemplates a hearing on motions filed under that section, such a hearing is not necessary when "the

files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *accord U.S. v. Taylor*, 605 F. Supp. 3d 1079, 1081 (N.D. Ill. 2022) (citing *Kafo v. U.S.*, 467 F.3d 1063, 1067 (7th Cir. 2006); *Almonacid*, 476 F.3d at 521); *see also U.S. v. Martin*, 549 F. Supp. 3d 767, 773 (N.D. Ill. 2021) (" [A]n evidentiary hearing is not required if the defendant's allegations are 'vague, conclusory, or palpably incredible rather than detailed and specific.' "). The undersigned, as the district judge who presided over Petitioner's underlying criminal case, "is 'uniquely suited to determine if a hearing [is] necessary.' " *See Taylor*, 605 F. Supp. 3d at 1081 (quoting *Rodriguez v. U.S.*, 286 F.3d 972, 987 (7th Cir. 2002), *as amended on denial of reh'g and reh'g en banc* (7th Cir. 2002)).

As a substantive matter, the Sixth Amendment to the U.S. Constitution grants criminal defendants the right to the effective assistance of counsel. *Wyatt v. U.S.*, 574 F.3d 455, 457 (7th Cir. 2009) (citing *Watson v. Anglin,* 560 F.3d 687, 690 (7th Cir. 2009)). To prevail on a claim of ineffective assistance of counsel, Petitioner must prove his counsel's performance fell below an objective standard of reasonableness or, put another way, was "objectively deficient," and caused prejudice. *See id*. at 457-58 (citing *Strickland*, 466 U.S. at 687-88); *Galbraith v. U.S.*, 313 F.3d 1001, 1008 (7th Cir. 2002). "Both components of the test must be satisfied; 'the lack of either is fatal.' " *Clay v. U.S.*, 311 F. Supp. 3d 911, 918 (N.D. Ill. 2018) (quoting *Eddmonds v. Peters*, 93 F.3d 1307, 1313 (7th Cir. 1996)).

During this inquiry, it is presumed that Petitioner's counsel was "reasonably proficient." *Galbraith*, 313 F.3d at 1008 (citing *U.S. v. Godwin,* 202 F.3d 969, 973 (7th Cir. 2000)); *see also Wyatt*, 574 F.3d at 458 ("[A] movant must overcome the 'strong presumption that counsel's conduct falls within the wide range of reasonable

15

professional assistance.' "); *Clay*, 311 F. Supp. 3d at 919 ("The central question in this analysis is not whether counsel's conduct deviated from best practices or most common custom, but instead, whether an attorney's representation amounted to incompetence under prevailing professional norms.") (cleaned up). Furthermore, on the question of prejudice, Petitioner must prove there was a reasonable probability that, absent counsel's objectively unreasonable or deficient performance, the result would have been different. *See Wyatt*, 574 F.3d at 458 (quoting *Hill v. Lockhart,* 474 U.S. 52, 59 (1985)); *Galbraith*, 313 F.3d at 1008 (citing *Tezak,* 256 F.3d at 712; *U.S. v. Jordan,* 870 F.2d 1310, 1318 (7th Cir.1989)). In this context, a "reasonable probability" is a probability that sufficiently undermines confidence in the outcome of the proceedings, and it is not enough for Petitioner to identify errors that merely "had some conceivable effect on the outcome" of those proceedings. *Clay*, 311 F. Supp. 3d at 919 (quoting *Strickland*, 466 U.S. at 693-94; citing *Rastafari v. Anderson*, 278 F.3d 673, 688 (7th Cir. 2002)).

Here, the Court finds none of Petitioner's grounds for relief satisfy the prongs of the ineffective assistance of counsel inquiry. First, the Government is correct that Petitioner's arguments as to the Court's reliance on his "greed and willingness to target elderly victims" were presented to and rejected by this Court for purposes of the sentencing and the Seventh Circuit for purposes of his direct appeal. *See, e.g., Patel*, No. 21-cr-30118-DWD, Doc. 49, pg. 6 (trial counsel arguing in Petitioner's Sentencing Memorandum and Request for Downward Variance From the Guideline Calculation that "it is notable that he profited substantially less from this scheme"); *id.* at Doc. 71, pg. 16 (trial counsel arguing at the Sentencing Hearing that Petitioner "was stupid, and he

wasn't paid a lot of money for being a mule, about 6,000 or so in the nine days of indictment that the Government alleged this happened"); *id.* at Doc. 71, pg. 17 ("And I think because the enhancements are quite punitive despite what he really knew and what he really did compared to others' involvement, that is why rather than having a hearing on the 12 level bump or the two level bump or the two level bump for paragraphs 32, 33, 34, 35, knew or should have known, I'm arguing it under the 3553(a) factors that the Court is allowed to go down from the 44 months the Government is seeking or the bottom of the guidelines, which is 41 months by means of a variance."); *Patel*, No. 23-1080, Doc. 18, pgs. 2-3 (Seventh Circuit noting the arguments of appellate counsel and Petitioner before stating: "Patel argues that the district court should not have sentenced him above the Guidelines based on factors already accounted for in the Guidelines (*e.g.*, vulnerable victims, *see* U.S.S.G. § 3A1.1(b)(1), high loss amount, *see id.* § 2B1.1(b)(1)(G)). But a sentencing court need explain only why the sentence is appropriate under the relevant statutory criteria—here § 3553(a)—and the court did exactly that."). On this record, which also includes the admission in the Stipulation of Facts that "[t]his case arises out of a phone scam targeted at elderly victims," the Court cannot hold trial or appellate counsel's performance was deficient or prejudicial. *Patel*, No. 21-cr-30118-DWD, Doc. 38, pg. 1

Second, as to the arguments relating to post-arrest and unindicted conduct, it was reasonable for trial and appellate counsel to avoid calling further attention to that conduct. As noted by the Government, "[d]espite all th[o]se facts, neither probation nor the government recommended an enhancement for obstruction of justice or that [Petitioner] lose acceptance-of-responsibility points." (Doc. 3, pgs. 13-14). For that reason,

17

at the Sentencing Hearing, the Court agrees with the Government that "Defense counsel acted reasonably when he took this as a win, focusing…on mitigating factors rather than diving headfirst into the morass of bad facts." (Doc. 3, pg. 14). When varying upward at the Sentencing Hearing, the Court could cite the particular conduct, which was outlined in the PSR, during its application of the § 3553(a) factors, without making findings by a preponderance of the evidence. *See U.S. v. Burnett*, No. 23-2565, 2024 WL 3873942, *2 (7th Cir. Aug. 20, 2024) ("[A] court can consider evidence not addressed in a guidelines adjustment in the context of the § 3553(a) factors. And with that evidence, the court does not need to make a finding supporting each § 3553(a) factor (i.e., 'This evidence establishes by a preponderance of the evidence that you are a danger to the public'). It can make 'commonsense inferences' from the information before it. The fundamental requirement is that a court base its assessments on reliable and accurate information.") (internal citations omitted). Similarly, as to the unindicted conduct discussed by Petitioner, it is true "[t]he base offense level must reflect…the defendant's 'acts and omissions…that were part of the same course of conduct or common scheme or plan as the offense of conviction." *U.S. v. Zehm*, 217 F.3d 506, 511 (7th Cir. 2000) (quoting U.S.S.G. § 1B1.3(a)(2)). And, again, many of the facts relevant to this argument were admitted in the Stipulation of Facts or contained in the PSR. Therefore, the Court concludes neither trial nor appellate counsel's performance was deficient or prejudicial on this basis.

Third, as to the arguments about the actual loss and restitution calculations, the record reveals Petitioner is simply incorrect. For one thing, Petitioner admitted in the Stipulation of Facts that "the intended loss amount is greater than $250,000," which is

18

directly applicable to the sentencing enhancement for when "the loss [i]s more than $250,000. But less than $550,000." *See Patel*, No. 21-cr-30118-DWD, Doc. 38, pg. 3, Sealed Doc. 52, pg. 8. Further, as "a conservative estimate," the PSR stated "[t]he [total] loss involved at least $483,947." *Id*. at Sealed Doc. 52, pgs. 6, 8. That figure "was determined by using the amounts identified in text conversations between the defendant and his coconspirator(s) ($32,886 + $390,561 = $423,447); the two packages pending pickup per the defendant's phone ($20,000 + $10,500 = $30,500); and E.R.'s package $30,000." *Id*. at 6 (Emphasis in original omitted). As noted by Respondent, the Court could reasonably estimate the loss in the underlying criminal case. *See U.S. v. Gumila*, 879 F.3d 831, 834 (7th Cir. 2018) ("We review the judge's loss calculation deferentially and will reverse only if we find clear error. [The defendant] must show that the judge's calculation 'was not only inaccurate but outside the realm of permissible computations.' At sentencing the government bears the burden of proving the loss amount by a preponderance of the evidence, but a reasonable estimate will suffice.") (internal citations omitted); *accord U.S. v. Harmelech*, 927 F.3d 990, 996 (7th Cir. 2019); *U.S. v. Newton*, 76 F.4th 662, 672 (7th Cir. 2023); *see also* U.S.S.G. § 2B1.1(b)(1)(G), n. (A) ("Loss is the greater of actual loss or intended loss."); U.S.S.G. § 1B1.3(a)(1)(B) ("Unless otherwise specified, (i) the base offense level where the guideline specifies more than one base offense level, (ii) specific offense characteristics and (iii) cross references in Chapter Two, and (iv) adjustments in Chapter Three, shall be determined on the basis of the following…(B) in the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a

conspiracy), all acts and omissions of others that were — (i) within the scope of the jointly undertaken criminal activity, (ii) in furtherance of that criminal activity, and (iii) reasonably foreseeable in connection with that criminal activity; that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense.").

Further, the restitution ($206,300), which is distinct from intended loss under the sentencing guidelines, represented the actual loss in the case due to Petitioner. *See U.S. v. Dokich*, 614 F.3d 314, 319 (7th Cir. 2010) ("For restitution…the [Mandatory Victims Restitution Act] 'implicitly requires that the restitution award be based on the amount of loss actually caused by the defendant's offense.' ") (Emphasis in original omitted); *U.S. v. Robl*, 8 F.4th 515, 527 (7th Cir. 2021) ("A 'restitution issue is similar but not identical to the loss amount issue.' As we noted in *United States v. Locke*, 759 F.3d 760, 765 (7th Cir. 2014), a case can take on 'an unnecessarily complicated pallor by co-mingling the concepts of loss and restitution.' Restitution under the [MVRA] is narrower than loss under the Guidelines: restitution 'is limited to the actual losses caused by the specific conduct underlying the offense.' ") (internal citations omitted); *Patel*, No. 21-cr-30118-DWD, Sealed Doc. 52, pg. 15. And, again, neither trial nor appellate counsel were ineffective on this issue because, as with the vulnerable victims and substantive reasonableness arguments of Petitioner, they actually argued Petitioner was merely a mule in the conspiracy, such that he had a "minor role" in the conspiracy by not receiving as many of the ill-gotten proceeds as the other coconspirators. This Court and the Seventh Circuit rejected these arguments, but neither counsel was ineffective for raising them.

In sum, Petitioner invokes grounds for relief based only on the ineffective assistance of counsel. However, trial and appellate counsel were not ineffective for failing to object to issues that they actually raised or that the Seventh Circuit has deemed frivolous. In other words, it would defy logic to find trial or appellate counsel were deficient, or caused prejudice, by actually raising the arguments identified by Petitioner, or by declining to raise arguments that the Seventh Circuit has agreed are frivolous. Since the record in the case does not reflect that Petitioner's trial or appellate counsel were ineffective at any time, his Motion to Vacate, Set Aside, or Correct Sentence is **DENIED**.

### III. CONCLUSION

For the reasons explained above, Petitioner's Motion to Vacate, Set Aside, or Correct Sentence under § 2255 is **DENIED** without a hearing. *See* 28 U.S.C. § 2255(b); *Taylor*, 605 F. Supp. 3d at 1081; *Martin*, 549 F. Supp. 3d at 773. The case is **DISMISSED with prejudice**. The Clerk of the Court is **DIRECTED** to enter judgment accordingly.

Rule 11(a) of the Rules Governing § 2255 Cases in the United States District Courts requires the issuance or denial of a certificate of appealability when a final order is entered against an applicant like Petitioner. Such a certificate of appealability may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To meet this standard, Petitioner "must have a constitutional claim (or an underlying procedural argument on which a constitutional claim depends), and he must 'demonstrate that reasonable jurists would find the district court's assessment of his constitutional claims debatable or wrong.' " *U.S. v. Fleming*, 676 F.3d 621, 625 (7th Cir. 2012) (quoting *Tennard v. Dretke,* 542 U.S. 274, 281 (2004); citing

*Arredondo v. Huibregtse,* 542 F.3d 1155, 1165 (7th Cir.2008)); *accord Slack v. McDaniel,* 529 U.S. 473, 484 (2000). Here, the Court **FINDS** Petitioner's alleged grounds for relief lack merit, and reasonable jurists would not find that conclusion debatable or wrong. Therefore, since Petitioner has not made a "substantial showing of the denial of a constitutional right," the Court **DECLINES** to issue a certificate of appealability.

**SO ORDERED.**

Dated: April 6, 2026

s/ *David W. Dugan*

DAVID W. DUGAN
United States District Judge

22